**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| GARRY B. OLSON, JR. | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § No. 16-cv-00136 |
| | § |
| ROB SPILLAR, JIM DALE, AND | § |
| JASON REDFERN, CITY OF AUSTIN | § |
| EMPLOYEEES IN THEIR OFFICIAL | § |
| CAPACITIES; and THE CITY OF | § |
| AUSTIN, TEXAS, | § |
| | § |
| Defendants. | § |
| | § |
| | § |

**PLAINTIFF GARRY OLSONS ORIGINAL COMPLAINT
AND JURY DEMAND**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Garry B. Olson, Jr., hereinafter called Plaintiff, complaining of and about City of Austin, Texas, hereinafter called Defendant, and for cause of action shows unto the Court the following:

**PARTIES AND SERVICE**

1.      Plaintiff Garry B. Olson, Jr. is a citizen of the United States and the State of Texas, and resides in Travis County, Texas.

2.      Defendant City of Austin, Texas, a local governmental entity of the State of Texas may be served with process on the City Clerk of the City of Austin at the following address:  301 W. 2nd St, Austin, TX 78701. Defendant supervisors Rob Spillar (Spillar), Jim Dale (Dale), and Jason Redfern (Redfern), in their official capacity may be served with process at the following address:  301 W 2nd St, Austin, TX 78701.

**JURISDICTION**

3.      The action arises under the America with Disabilities Act as hereinafter more fully appears.

4.      This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

**NATURE OF ACTION**

5      This is an action under Title 42 U.S.C. Section 12101 et. seq. to correct unlawful employment practices on the basis of disability, and for retaliation based on Plaintiff's attempts to enforce his rights under that provision.

**CONDITIONS PRECEDENT**

6.      All conditions precedent to jurisdiction have occurred or been complied with:  a charge of discrimination was filed with the Equal Employment Opportunity Commission within three-hundred days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

**FACTS**

7.      Plaintiff was employed by the City of Austin on or about October 2014 as an operations superintendent in the Transportation Division.

8.      Plaintiff was hired by Mr. Austin Talley. Both Plaintiff and Mr. Talley have a diagnosis of PTSD.

9.      Approximately mid-November, 2014, Mr. Talley requested a workplace environment assessment from Mr. Leroy Bookman, HR consultant for City of Austin.  This was request was repeated several times over the next couple of months and nothing came

to fruition.

10.    On or about Dec. 19, 2014, Rob Spillar, Austin Transportation Division ("ATD") Director, scheduled a last minute meeting.  Spillar initiated a conversation with Mr. Talley at the meeting, in which he acknowledged Talley was a veteran, had been deployed and asked if Talley knew the City had resources he could use for PTSD. Spillar did not respond to Talley's questions of what Spillar was implying with this line of conversation.  Talley felt there was an implication being made that he would be fired if he did not use these resources.  Spillar informed Talley that he was really excited to have Plaintiff, another veteran, and Talley on staff as veterans, Spillar remarked that if Plaintiff had a service dog, it would need to be of a normal, adequate size and not a Great Dane. Talley informed Spillar that Plaintiff's previous service dog was a Shepherd breed, but it had passed away and that Plaintiff was looking into getting a smaller breed like Talley's.  Spillar then stated that he would be hiring veterans for parking enforcement, but those with service dogs wouldn't be hired because he couldn't have them worried about their dogs while walking the streets of Austin.

10.    Approximately mid-January 2015, Spillar summoned a meeting with Mr. Talley and Plaintiff, as well as Edna Santos, ATD HR Manager, and Assistant Director Jim Dale.

11.    On or about Jan. 20, 2015, the meeting was scheduled with Spillar, Santos, Dale, Plaintiff and Talley.  Everyone in the meeting seemed to know the topic well in advance, other than Plaintiff and Talley.  All concerns raised by Plaintiff and Talley were discredited.  Spillar stated during this meeting once again that he couldn't hire veterans with service dogs as parking enforcement staff. Talley tried explaining ADA laws that protect those with disabilities and in need of a service animal. Talley asked again when ADA

3

training would be conducted for all ATD personnel.

11.     The purpose of this meeting was allegedly also to counsel Mr. Talley and Plaintiff regarding attendance issues with a junior employee, Stephanie Spangler, and also to hash out disagreements between Jim Dale and Mr. Talley. During this meeting, Mr. Spillar mentioned that he was looking to fill 40 plus new ATD positions with veterans from the Fort Hood area but stated that would not hire veterans with service animals.

12.     During this general time period time, Mr. Talley was being harassed about his service animal. Due to a recent HR request, Spillar had been made aware that Plaintiff had been shopping for a new service dog (as his prior service animal had recently passed away). A joke was made about Plaintiff getting a Great Dane and Spillar quickly stated that a Great Dane was not suitable for office work because the animal was too big. Mr. Talley stated that Spillar was violating the ADA law by restricting and limiting Plaintiff to a certain size dog, regardless of it being a "joke". Mr. Talley also mentioned that Spillar was violating the law by discriminating against veterans with disabilities that require service animals.

13.     Since Spillar stated he wasn't going to hire veterans with service animals, Plaintiff took that statement as an implication not to get a service animal because Plaintiff would be undermining Spillar's views and might well face retribution for doing so.  As a combat veteran, diagnosed with PTSD and multiple Traumatic Brain Injuries (TBI), Plaintiff was greatly offended and viewed this attitude expressed by Spillar not so much as Spillar's not wanting the service animals around, but rather the disabilities associated with the veterans who require service animals.

14.     Between March and June, 2015, during a work absence by Mr. Talley, Plaintiff was subjected to a disgruntled supervisor, Jim Dale. Plaintiff personally had to

4

remind Mr. Dale on several occasions that whatever his issues were with Mr. Talley, to leave Plaintiff out of it. Mr. Dale's response was "I don't feel comfortable talking to you about my issues with Austin". Because of Dale's hostility towards Mr. Talley, and his mental association by Dale with Plaintiff, Plaintiff suffered from a hostile work environment, which lead to Plaintiff's low morale, high anxiety, and a general lack of desire to come to work.

15.     Approximately Mid-April, 2015, Spillar and Dale approached Plaintiff regarding a position change, a title change (to Data Architect) and a pay raise associated with it. Despite Plaintiff's expression that he wasn't all that interested, Plaintiff was still on the city's six-month probationary term and therefore was strong-armed into "accepting" this new position.

16.     Plaintiff was then placed under a new Division Manager who had absolutely nothing to do with Plaintiff's newly assigned position. According to Plaintiff's replacement Anthony Forcier, this was just a way to isolate and segregate Plaintiff away from his employees and the operation of his Department.

17.     During Plaintiff's first day in his new location, his new Manager, Jason Redfern, informed Plaintiff that, due to the city's compression pay policy, Plaintiff could not make more money than he, nor could Plaintiff be within 2 levels of Redfern's pay.  Because Plaintiff and Redfern were already very close in salary, this meant the position Plaintiff was promised and the pay associated with it would not in fact occur.

18.     Plaintiff's title was still Superintendent and while his new Division Manager was away on leave, Plaintiff was told to report to lower lever supervisors, despite his higher level title.  Plaintiff reasonably believed this was just another form of passive aggressive harassment by his management.

19.     Approximately May, 2015, Redfern, on behalf of Dale, verbally counseled Plaintiff and made accusations of his working too closely with a married female employee and that there were 'perceptions' of inappropriate relations.  Due to these false accusations, Plaintiff was told that he could no longer go to the facility where the female employee worked.  That facility was where 100% of Plaintiff's work and support was staffed and where he used to report before being moved.

20.     After reporting this situation to Human Resources, Plaintiff was approved to go back to the facility, but could no longer work with this female employee, despite the falseness of the impropriety allegations. Plaintiff reasonably believed this to be more retaliatory harassment.

21.     Along with the location move, Plaintiff had been promised a raise and promotion since April of 2015.  Dale told Plaintiff that there were higher priorities and that Plaintiff would receive the promotion only if the FY 2016 budget allowed for it. Plaintiff asked for a reconsideration, based upon promises Dale and Spillar had previously made, but the request was denied.  Instead, the promised position was reassigned.  From August 2 to October 19, 2015, Plaintiff was put on ADL.  The ADL began when Santos sent an email letter targeting Austin Talley and Plaintiff about having to gain approval from Dale and Spillar, both of whom Plaintiff has filed EEOC charges against, to have a business outside of city employment. Plaintiff immediately called the union representative, Carol Guthrie, and said that he could no longer take this retaliation.  Plaintiff later learned that City of Austin HR manager Joya Hayes did not permit ATD HR to distribute this letter.  Plaintiff refused to sign the letter, as Spillar and HR were aware of his IT business when he was hired, and Spillar had commented at the hiring on how helpful it would be. Plaintiff let Redfern, his then current manager, know about his refusal, and it was then

he was placed on ADL.

22.     In early October 2015, a meeting was conducted with Jeff Burton (City Employee Relations Manager), Spillar, Carol Guthrie (AFSME Union Rep) and Plaintiff. The parties agreed that Plaintiff would create a Statement of Work for the job description, which was submitted and approved.  Spillar cited no design or development work was needed in Plaintiff's new role.  Plaintiff's start date would be October 19, 2015.

23.     Spillar agreed that Plaintiff could occupy a small office in order to avoid fluorescent lighting, as outlined in Plaintiff's FMLA paperwork by his doctor.   Prior to Plaintiff's filing of an EEOC claim, management purchased special lamps (over $200) for Plaintiff and placed him in a workspace friendly to his disabilities without any documentation from his doctor, relying instead on Plaintiff's Disabled Veteran 'DV' license plates as an indication that Plaintiff did in fact have a disability.

24.     After returning from ADL, Plaintiff was removed from the previous accommodating workspace, and placed in a cubicle surrounded by lighting that affected Plaintiff in harsh ways. Plaintiff was then told he needed to request FMLA, get a letter from his doctor outlining all his disabilities, and then file a request for accommodations letter with the city's ADA organization.  Plaintiff reasonably believed all these new requirements to be retaliation.

25.     On approximately October 19, 2015, while walking to his new workspace, Finance Manager Anthony Segura, directed by Spillar, said the previous workspace Plaintiff was guaranteed was too small, lacked office furniture, and had limited air flow, so Plaintiff was removed. Four months later, Spillar put 2 full time employees in that same office space. In September of 2016, the City began construction of a closet with a 9 foot wall and no

windows to surround Plaintiff's workspace, which he reasonably believes to be retaliation against him.

26.     During the months Plaintiff has been back on the job, he has exhausted over 180 hours of sick and vacation time, both FMLA and non-FMLA time, due to suffering severe eye strain and migraines, which stem from the lighting Plaintiff has been forced to sit under and around.  Plaintiff's doctor specifically noted in his FMLA paperwork to move him from the fluorescent lighting if migraines and eye soreness continued.  Plaintiff has requested numerous times to be moved to an adjacent, multi-person office, with direct outside lighting. The person occupying that office never used the overhead lighting.  Plaintiff was declined every time.

27.     Plaintiff is constantly forced to acknowledge and explain his disabilities in the workplace, and it has caused him to seek medical treatment for anxiety issues, mood and sleep, due to the hostile work environment he is experiencing.

28.     Plaintiff has requested multiple times, as suggested by his doctor and outlined in his FMLA paperwork, to telecommute 2 days per week to lessen his exposure to the lighting.  ATD currently allows employees to telecommute.  Segura has denied his requests because Segura believes Plaintiff may not devote his time to city work, but rather to personal work.

29.     On or about July 8, 2016, Plaintiff requested ADA reasonable accommodation for a service animal, and received the following response: "*Very good. I will recommend approval ASAP. As is the case with service animals, the department may wish to approve the dog on an initial 3-month trial basis. This is common and allows staff to determine effect on business operations. This is common practice and the accommodation*

*will be extended indefinitely if no problems arise.  For the record, a problem is not defined*

*based on other staff's fears or dog allergies. Those are not proper rationale for disallowing*

*a service animal.  It would be more focused on the dog demonstrating aggressive behaviors,*

*excessive barking that might be a disruptions, etc."*

Plaintiff reasonably believes this to be additional retaliation as well as creating a
hostile work environment to his accommodation.

30.     Subsequent to that date, Plaintiff continues to be retaliated against due to
Plaintiff's complaints and his disabilities.

## AMERICANS WITH DISABILITY ACT

31.     Defendant, City of Austin, by and through Defendant's agents Spillar, Dale, and
Redfern, intentionally engaged in unlawful employment practices involving Plaintiff because of
his disability.

32.     Defendant, City of Austin, by and through Defendant's agents, Spillar, Dale, and
Redfern, intentionally discriminated against Plaintiff in connection with the compensation, terms,
conditions and privileges of employment in violation of 42 U.S.C. Section 12112. The effect of
these practices has been to deprive Plaintiff of equal employment opportunities and otherwise
adversely affect his status as an employee.

33.     At all material times, Plaintiff was able to perform the essential functions of his
position.  Plaintiff suffers from post-traumatic stress disorder which substantially limits at least
one major life activity.  Plaintiff was discriminated against on the basis of his disability.

34.     Plaintiff alleges that Defendant, City of Austin, by and through Defendant's agents,
Spillar, Dale, and Redfern, discriminated against Plaintiff on the basis of disability with malice or
with reckless indifference to the protected rights of Plaintiff.

## RESPONDEAT SUPERIOR AND RATIFICATION

35.     Whenever in this complaint it is alleged that the Defendant, City of Austin, did any act or thing, it is meant that the Defendant's officers, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendant or was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees, or representatives.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## BY CITY OF AUSTIN

36.     Spillar, Dale and Redfern intentionally or recklessly created an atmosphere in which employees made fun of Plaintiff for his PTSD and /or requests for use of a service dog and questioned the need for a service dog.  Defendants' conduct was extreme and outrageous and proximately caused Plaintiff severe emotional distress.  Plaintiff suffered damages for which Plaintiff herein sues.

## RETALIATION BY CITY OF AUSTIN

37.     Plaintiff alleges that Spillar, Dale and Redfern instituted a campaign of retaliation which included filing and encouraging the filing of unwarranted complaints against Plaintiff for alleged violations of city policy, none of which proved true.  This retaliation was and is due to Plaintiff exercising his rights by filing a complaint with the EEOC regarding the discrimination and lack of accommodation provided to him.  Plaintiff suffered damages for which Plaintiff herein sues.

## DAMAGES

38.     Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendants described hereinabove:

        a.      All reasonable and necessary Attorney's fees incurred by or on behalf of

Plaintiff;

b.      All reasonable and necessary costs incurred in pursuit of this suit;

c.      Emotional pain;

d.      Expert fees as the Court deems appropriate;

e.      Inconvenience;

f.      Interest;

g.      Loss of enjoyment of life;

h.      Mental anguish in the past;

i.      Mental anguish in the future;

j.      Humiliation;

## EXEMPLARY DAMAGES

39.     Plaintiff would further show that the acts and omissions of Defendants complained of herein were committed with malice or reckless indifference to the protected rights of the Plaintiff.  In order to punish said Defendants for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendants for exemplary damages.

## SPECIFIC RELIEF

40.     Plaintiff seeks the following specific relief which arises out of the actions and/or omissions of Defendants described hereinabove:

a.      Prohibit by injunction the Defendants from engaging in unlawful employment practices;

b       Reinstate Plaintiff to the actual position and pay grade, IT Data Architect, which Plaintiff held and was promised but for the unlawful employment

actions of Defendants;

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Garry Olson, respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants, jointly and severally, for damages in an amount within the jurisdictional limits of the Court; exemplary damages, as addressed to each Defendant, together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

/s/Roger B. Borgelt
Roger B. Borgelt
(Texas Bar No. 02667960)
Borgelt Law
614 S Capital of Texas Hwy
Austin, Texas 78746
512-600-3467
roger@borgeltlaw.com
Attorney for Plaintiff

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**